United States v. González. Thank you. Good morning, Your Honors. May it please the Court, my name is Brendan White. I represent Appellant Winifredo González in this case. The issue appears to be fairly clean-cut and straightforward and there actually isn't a great deal of disagreement among the parties on it. Can I ask you a question then? Certainly, Your Honor. If you're starting out that way, isn't there some danger of your winning? That is to say, isn't it possible if this goes back down, the government withdraws its offer of a deal and your client gets a longer sentence than he already received? Is that a possibility? Is that a concern? Yes, it is, Your Honor. That's always a concern in my role. It's a possibility that certainly needs to be considered. It has been considered, of course, and frankly, it is the kind of problem I generally hope to have, although I realize the potential downside. I can't order it. I just want to feel comfortable that you've considered this with your client and you've decided you'd rather take that chance. Yes. If Your Honor wants me to go into that, I certainly have. I don't know what I'm allowed to go into or not. I just want to make sure we're not making things worse. Of course. I am cognizant of that possibility, of course. It's always a risk in many appeals from criminal convictions, including this one. As a disclaimer, I have to point out that I am not admitted in the Western District of New York, as I made clear to my client. If it were to go in that direction, I would not be representing him there. He understands that, and here we are. There was never a motion, a formal motion to withdraw his plea. Is that correct? That is correct, Your Honor. With all due respect to the attorneys involved in the case, there was no reference by any of the attorneys as to what was a pretty blatant violation of Rule 11. It was only my client, in admittedly not the most articulate fashion, who brought to the court's attention prior to being sentenced that what's going on here. But everyone had read the plea had read the PSR, and it was in the PSR. That is correct, Your Honor. So why isn't this harmless error? Because at that point, he did want to take the plea back. I'm sorry? Let me take that back. I apologize, Your Honor. He clearly expressed dissatisfaction with his attorney's at that point, making it clear on the record to the judge who understood the import of this that nobody ever told me about this. Well, then at that point he knew, so all he had to say was I want my plea back, or I don't want to be sentenced. He could have said that. He's not an attorney, Your Honor. His attorney was standing right next to him. The judge this is the reason why Rule 11 exists. It's the judge's responsibility to make clear to the defendant at that time. I'm now being put on notice that things might have gone differently had you been aware of this very serious consequence of your conviction. At this point, do you wish to take your plea back, or do you at least wish some additional time to speak with your attorney about what options you have? Those all could have been done. The judge basically acknowledged it, but then said, but that doesn't matter. Let's move on, which strikes me as a very odd way of handling that. What specifically did he say? Are you quoting him? What the judge said I can quote it directly if you'd like, Your Honor. I apologize. It'll just take a moment. Do you happen to have the My apologies. I forgot my tabs, and I didn't tab. I think it's on A83. The court says, okay, I understand that part. Okay, I have it. Thank you. Why don't you go ahead and read it? Certainly. The court, you're a permanent resident. Is that correct? Yes, I am. The court, all right. Was that in the plea agreement, Mr. Marangola? No, judge. There's nothing in there about the defendant's residency, at which point the probation officer brings to the court's attention. Judge, it's in paragraph 86 of the pre-sentence investigation. It was information our office received from Immigration and Customs Enforcement, and now the central part of what the court said. Okay, I understand that part, but the part Mr. Gonzalez is raising is whether or not he was advised that the plea in this case would have consequences on his status in the United States, and I don't recall that being part of the plea agreement in here. The sentence here is involving almost 20 years. That may be why it wasn't part of the agreement. Is there anything else, defendant? No, Your Honor. It's certainly true. At that point, the defendant could have said, I hereby wish to take my plea back. Then just moments later, he says, no, I got nothing to say. I'm not satisfied with Mr. Smith's defense, whereas earlier he had said he was satisfied. At that point, he was sort of on a roll, so to speak. As Your Honors know, that was not his only gripe with Mr. Smith's defense, but certainly one that the court should have recognized was fatal to a knowing, intelligent, and voluntary plea of guilty. So if we were to agree with you that there is a serious Rule 11 concern, is the proper result to vacate and remand or to have a Jacobson hearing such as both you and the government suggested in your briefs to determine whether Mr. Gonzalez, in fact, would have wanted to withdraw his plea or not? I maintain that the record on its face does answer that question, that yes, he would have wanted to withdraw his plea had he been put on notice that yes, this is something you can do. Nobody ever told him that. The record also reflects that he said that you told me, you said I have to. Don't worry about that. I was here since I was five years old. Is that true? He told me I don't have to worry about that, which, if that's accurate, seems to have been incorrect advice. In any event, as I said, I believe the record does show the fact that he had been here since he was a small child, the fact that he had his entire family living here in the United States, very consistent with the Supreme Court's evaluation in Lee v. United States, where they make clear that, listen, somebody who has no connections to another country has lived here their entire life. This is going to be often the most important consideration. And Lee held as well that it can be rational behavior. You have to at least allow a defendant the opportunity to risk a longer sentence out of concern for certain deportation consequences. Without question. And we all know, you never know how a trial may be resolved. Could you respond to Judge Carney's question? I don't think you did. Certainly. It's my fault. I'm nowhere near the microphone and I'm not speaking loud enough. Could you respond to Judge Carney's suggestion of a possible Jacobson remand? I'm certainly open to that as an alternate. As I said, I maintain it's not necessary. But should the court believe that, yes, it is appropriate for additional fact-finding to be done, I agree that that would be appropriate. Am I right in understanding that you think that the government here, because there was a clear issue on the record that Mr. Gonzalez made about his concern regarding the failure to give  the verdict?  is a clear indication that the government is not willing to consider the burden of showing that the error was harmless. That he clearly would have pleaded guilty anyhow. And really, that that conclusion is foreclosed by the Supreme Court's June decision in Lee. I certainly do agree with that, Your Honor. Thank you. We'll hear from the government. Good morning. May it please the Court, my name is Robert Marangola on behalf of the government. I am the Mr. Marangola in the transcript, unfortunately. Let me first state that to respond to Your Honor's reference to Lee, this case is not Lee. In that case, the Supreme Court did not infer that the defendant would likely have not proceeded forward. There was, in their words, substantial and uncontroverted proof that the defendant would not have pled guilty had he known. Well, there had been an evidentiary hearing on that point, right? Correct. And the Supreme Court endorsed that a defendant might choose to risk a longer sentence and even a much longer sentence and a worse plea deal because of deportation consequences. And that underscored the gravity of the failure to advise, right? Yes. And in that case was a 2255 appeal, which is the vehicle for a defendant to address his ineffective assistance claims. And that's really what this case is. Isn't this really not about ineffective assistance but about whether his plea was knowing and voluntary? I mean, he apparently, from this transcript, it suggests that he got bad advice, that it didn't matter, that don't worry about the deportation consequences. And we have an opportunity to remedy that right now. We have a judge who failed to follow up as well as counsel the whole crew at the sentencing hearing, not making sure that the defendant understood the immigration consequences of his plea. Well, I think what we have here is a comment by a defendant about his attorney's advice on a particular topic. And we don't have any comment from the attorney about that topic. We don't have anything else. What we're hearing is not for the adequacy of the advice of counsel, but the effect of the error in the admission . . . The problem with that analysis is that, as Mr. White pointed out, the onus for getting this straight is not on counsel, and it's certainly not on the defendant, it's on the judge. And it's the judge here who dropped the ball, and the instructions to him in Rule 11 couldn't be clearer. And in this circuit, the requirement to advise of deportation consequences predated the addition of this requirement to Rule 11, so people in this circuit, judges in this circuit, have known for twenty-five years that you've got to do this, and it's not . . . I mean, it's . . . It's not hard. I'm sorry. We can see there was error. That was a defect in the Rule 11 colloquy, but that doesn't end the analysis. But you concede it was error and it was plain, right? Yes, Your Honor. And the defendant raised it at the sentencing hearing, right? But are you saying that the defendant still bears the burden of showing that he would have pleaded guilty? Well, in terms of raising it, the defendant didn't say to Judge Geraci, I didn't know I was subject to deportation at the time I took this plea. He didn't say . . . He didn't say it in so many words, but that's the clear import of the transcript. Well, he never said . . . He said, you said don't worry about it. Wait, what? Right. And I think the . . . I mean, we can all agree that the language used by the defendant himself to the court is not exactly clear as to what he's saying. I'm sorry. I finished. I didn't . . . Go ahead, Your Honor. I was going to ask whether, since it came up, whether this is a question of whether it's plain error or harmless error or some combination of the two. I was under the impression that it was harmless error, which puts the burden on you rather than on the defendant. Is that not right? I disagree. I think it is plain error because I think under Vival and other cases that have cited it, other cases from this court that have cited it, a where he is aware of the defect, but . . . Why is it plain error if he was trying to bring it up and didn't know how it . . . I mean, the issue was raised there, wasn't it? It may not have been handled, but wasn't it raised there? Well, let's . . . Are you saying it wasn't raised until it was raised on appeal and therefore it's plain error? I don't think the defendant's complaint about his attorney's potential advice on that issue is the same thing as the defendant filing a motion to appeal. But the judge knew that Rule 11 had been violated when he read the PSR. I agree, Your Honor. That must have been manifest, and I think the court made a comment that it wasn't in the plea agreement. So the pre-sentence report raised it. It was clear to everyone who read that proceeding that Rule 11 hadn't been complied with. I think under the Supreme Court case of Vaughn, V-O-N-N, I think there's some language in there where the Supreme Court says the onus is on counsel to seek the relief. I agree that the judge was aware that there was a Rule 11 violation, but I don't know that it's . . . It's on counsel because the usual presumption is the judge may not be aware of the error. Here, it is impossible that the judge was not aware of the error because he administered the Rule 11 colloquy and then he read the pre-sentence report. Then the issue becomes, should the judge at that point understand that the defendant wants to vacate his plea or grant an adjournment that wasn't requested? That's what district judges get the big bucks for. Of course, he is running this proceeding. He does Rule 11. Rule 11 is not an obscure rule and he knew or certainly should have known that it hadn't been complied with. Yes, Your Honor, and I think the failure to comply in this case, even to the attention before sentencing, I think the case law focuses on when it's brought to the defendant's attention before sentencing, what action does he take? Because if he doesn't take . . . if he doesn't ask the district court to vacate his plea based on that error, how should he be allowed to come to this court without ever asking the district court for that relief? How should he be allowed to ask this court for that same relief? Let me hear your comments on the judge's behavior once the judge realized that Rule 11 had been violated. Could he have said . . . What do you think he should have done? Oh, well, we'll just let it go, hope nothing happens? I think he could have offered the defendant an adjournment. We're loath to write a . . . to issue a writing saying that. I think the judge, it became clear and he asked the defense, is there anything further? And they said no. And he asked him again, is there anything further? And then he asked if there were comments at sentencing. But if I'm the judge and it's clear to me that the rule has been violated, what warrant do I have to pass the responsibility to correct the problem onto the defendant or the defense counsel? Isn't that my responsibility as a judge? Well, to correct the rule? To correct the violation? Yeah. He committed the violation. Why isn't it his responsibility to correct it? Well, I guess if the defense isn't asking for a remedy for the violation . . . He didn't know that. The judge didn't know that. That's because he didn't inquire. I understand if there had been an additional . . . an adjournment, he might have had more information. But he asked the defense, is there anything further? He asked him twice. And they didn't ask for any relief. The PSR was issued six months before this sentencing. Do we know when the defendant first saw the PSR? No. We know that he, at some point before sentencing, that he did, and that he never asked the court, never said to the court, I didn't know about the deportation consequences. If I had known about them, I would have taken my . . . I would not have pled. Was it time to file a motion after the sentencing? Or is that precluded? If he tried to withdraw his plea after the sentencing, after this proceeding that we just heard, would he have been entitled to do that? Or does he have to raise it then on direct appeal because the proceeding is complete? I guess it depends on what the basis of his argument is. If it's, my attorney gave me bad advice, he never told me there were deportation consequences to this plea, which is the Lee case, then that's a motion after sentencing to Judge DeRacy, so he can then have his attorney appear and take a fact-finding hearing, have a fact-finding hearing with Mr. Smith to say, yes or no, I told him about the immigration consequences. These were our conversations about it. He was or was not aware. He was entitled to file such a motion after sentencing. Is that right? I think he would always have the right to file a 2255 if he's going to argue that his . . . he had ineffective assistance of counsel in taking the plea. I don't think the appeal waiver would violate, would prevent that, because he would be saying that, in essence, my plea was involuntary based on the deficient advice. Before you sit down, let me ask you this. Does the record reflect, and I know this plea agreement was sort of two-step. You were contemplating a 5K1. That didn't materialize, but was the 228 plus the 924 his maximum exposure, or did the government give him some consideration there? Well, the 228 was including the 924C. Okay. That was including. So the plea agreement contemplated . . . Did he get a break in the plea agreement even though he didn't get a 5K1 letter? Sure. His exposure could have been much higher. What could it have been? What was the maximum exposure here? Well, the maximum is life for both the drug offense and the 924C offense. He also secured the dismissal of three different sets of felony-level state drug trafficking charges that were pending at the time he entered this plea. And none of those would have impacted his criminal history because they were dismissed in advance. He secured that, as well as the right to get below not just the guidelines with the 5K1, but their provisions allowing for below the ten-year mandatory minimum for the drug charge, as well as the five-year mandatory minimum for the firearms offense. So if he hadn't gotten up from under the state charges, he would have been in what, criminal history category 6? It would depend on what he received in those, but he was a 1 in the plea agreement. With three additional felony state drug trafficking sentences, I would imagine he's at least a 5, pretty close to a 5. So now you would take away the three-level increase that was agreed to in the plea agreement for securing the dismissal of those charges because that was only in there as a result of the dismissal. But he would have at least, I would estimate, at least a 4 or 5, I mean, potentially a 6. But if there were three three-point convictions, that's nine points. That's a criminal history category. I think that's 5. When you all started your negotiations, when you first sat down, he was looking at what? He was looking at- Life? Yes, he was looking at life and the unknown of what the three separate state felony drug charges were going to bring, whether those, what sentences they would be, as well as whether those would be run consecutive to each other or consecutive to a federal sentence. All of that was then taken off the table by securing the dismissal of each one of those charges. What happens to those charges if this is removed? It's already happened. They've been dismissed. So this will not affect that? No. A remand would not affect the state charges, right? I'm just asking. Correct. Correct. They've been dismissed. I don't believe there's any way to sort of revive those at this point. Okay. Thank you very much. Thank you very much. Mr. White, you have two minutes rebuttal. Thank you, Your Honors. Two quick points I think need to be reiterated. One, Mr. Gonzales is not a particularly young man. He's in his mid-40s. However this particular sentence as it stands plays out, he would be in likely his mid-60s if he were to get out. On top of that, I don't think there's any way to get around the fact that this agreement, as contemplated, had intended for there to be cooperation. Realistically speaking, I can't imagine . . . We all know the type of colloquy that goes on during cross-examination. Well, I don't expect the judge to do anything. I'm hopeful that I receive a lower sentence. The reality, of course, is he certainly expects to receive a substantially lower sentence. And it's impossible to imagine that somebody under those circumstances is thinking, okay, this is wonderful. I'm going to fulfill my end of the bargain, cooperate, and I will get out. And then I'll be deported after that. That's not what he wants. His goal is to do what he was asked to do, cooperate, and continue living his life here in the United States. I thought he said he had declined to cooperate because of fears for his family. That occurred later on in the process. But at the time the plea agreement was made and the plea was taken, cooperation was certainly contemplated. And I don't think there's any way to get around the strong likelihood that . . . He obviously intended to stay in America, and being allowed to stay here was central to his decision to cooperate rather than fighting the charges. Where was he born? He was born in the Philippines. He has no connection there whatsoever. He's lived in the United States. And could his trial counsel have made a motion after sentencing if he had retreated with Mr. Gonzalez and said, Wait a second. This is totally different from what I understood. I just had a chance to look at the PSR with you. We focused on these other things. I didn't notice that. Yeah, after . . . After sentencing. Was that an option or not? It is not my understanding of the way the federal rules work that he could make a motion to withdraw his plea following sentencing. Because it's unfortunate they didn't go back to Judge Gerasi and ask him to correct his error. That's part of what we look for, obviously. Of course. Absolutely. If Your Honors have no other questions, thank you. Okay, thank you. We'll take the matter under advisement.